IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCES ELIZABETH CARTER VALENTINE AND WILLIAM RILEY BAXTER CARTER IN THEIR CAPACITIES AS CO-ADMINISTRATORS OF THE ESTATE OF MICHAEL E. CARTER, | § § § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:23-cv-575-L |
| WHITETAIL CAPITAL, LLC, PAUL G. COMRIE, AND ELEMENTS INTERNATIONAL GROUP, LLC, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Whitetail Capital, LLC, Paul G. Comrie, and Elements International Group, LLC have filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1), or, alternatively, under Rule 12(b)(6). *See* Dkt. No. 12. United States District Judge Sam A. Lindsay has referred the motion to dismiss to the undersigned United States Magistrate Judge for hearing, if necessary, and findings and recommendations. *See* Dkt. No. 15.

Plaintiffs Frances Elizabeth Carter Valentine and William Riley Baxter Carter, in their capacities as co-administrators of the Estate of Michael E. Carter, have filed a response, *see* Dkt. No. 16, and Defendants have filed a reply, *see* Dkt.

-1-

No. 17.

For the reasons explained below, the Court should deny the motion.

## Background

Michael E. Carter was a salesman and entrepreneur who worked for Elements International, a furniture wholesaler. *See* Dkt. No. 10 at ¶12. Until his retirement in 2021, Carter served as both an officer and manager of Elements International and held a five percent membership interest in Elements International (the "Carter Membership Interest"). *See id.*

When he retired, Carter sold the Carter Membership Interest to Whitetail Capital. *See id*. at ¶¶14-16. Whitetail was the majority owner of Elements International's membership interests. Paul Comrie was Elements International's CEO and Whitetail's president, manager, and sole member. *See id.* at ¶¶10-12.

Carter and Whitetail executed a Membership Interest Purchase and Sale Agreement dated effective June 30, 2023 (the "P&S Agreement"). *See* Dkt. No. 10-1. Carter also executed an Assignment and Assumption of Membership Interest in Elements International Group, LLC transferring the Carter Membership Interest to Whitetail ("Assignment Agreement"). *See* Dkt. No. 10-2. And Carter executed a letter of resignation from his various roles at Elements International.

The P&S Agreement provided that the $3.4 million purchase price would be paid in two installments:

> Section 2. Purchase Price. As the full purchase price of the Subject Membership Interest, Purchaser shall pay to Seller the sum of Three Million Four Hundred Thousand and No/100 Dollars

($3,400,000.00) (the "Purchase Price), as follows:

    (i)    At the closing, by wire transfer of immediately available funds to an account identified by Seller to Purchaser ("Seller's Account"), Purchaser shall pay to Seller the sum of Two Million and No/100 Dollars ($2,000,000.00).

    (ii)    On or before December 31, 2022, by wire transfer of immediately available funds to Seller's Account, Purchaser shall pay to Seller the sum of One Million Four Hundred Thousand and No/100 Dollars ($1,400,000.00).

Paul Comrie and Elements International guaranteed the second payment:

    (iv)    Each of Paul G. Comrie, the principal of Purchaser ("Comrie") and the Company [Elements International] (together with Comrie, sometimes called "Guarantors") agree to guarantee payment of the second payment of One Million Four Hundred Thousand and No/100 Dollars ($1,400,000.00) due to Seller on December 31, 2022, as confirmed by their respective signatures below.

The P&S Agreement further provided:

    (v)    Should neither Purchaser nor Guarantors pay the payment referenced in Section 2(ii) and 2(iv) above on or before January 10, 2023, the Seller shall have the right to notify the Company of such non-payment, and the Company shall then issue (and Comrie shall cause the Company to issue) to Seller a portion of the Membership Interest commensurate with the outstanding payment, to wit membership interest in and to the Company in an amount equal to 2.0588 of the outstanding membership interest in and to the Company.

*See* Dkt. No. 10-1 at 1-2.

The P&S Agreement also provided that time was of the essence, *see id.* at 7 ¶13, and that all notices and communications must be made in writing. *See id.* at 4 ¶6.

The P&S Agreement was signed by Carter, Paul Comrie as Manager of Whitetail, and Mike Wurster as President of Elements International. *See* Dkt. No. 14-1 at 13-14. It was approved by Elements International's members and managers. *See id.* at 19-27 (Joint Consent).

Whitetail paid the $2 million due for the first installment to Carter.

Carter passed away on September 4, 2022.

At the time of his death, Carter was domiciled in Lafayette County, Mississippi. On September 22, 2022, the Chancery Court of Layfette County, Mississippi admitted Carter's will to probate and issued Letters of Administration to Carter's children, Plaintiffs Frances Elizabeth Carter Valentine and William Riley Baxter Carter, as Co-Executors to administer Carter's estate. *See* Dkt. No. 10-4.

As the December 31, 2022, deadline approached, Comrie repeatedly acknowledged Whitetail's obligation to pay the $1.4 million due to the Carter Estate but complained of financial hardship and stated that he wouldn't be able to pay the obligation when due. *See* Dkt. No. 10 at ¶31.

On December 19, 2023, Comrie texted "I spoke to our attorney. Sounds like you guys will own 2.0588% of Elements if I do not meet the $1.4MM payment obligation at month end. Let me know if you prefer other options. Hopefully there is a workable deal. Paul." *Id.* at ¶33. He followed up with "[l]et me know if there is something you want to try and work out. I just don't want the year end deadline to come and pass us. I'm okay with you guys retaining the shares too." *Id.* ¶ 34. On

December 27, 2023, Comrie texted that he was "willing to give $100K a month until it is paid off." *Id*. at ¶36.

The Carter Estate demanded Whitetail perform by making the $1.4 million second payment before the year end. *See id*. at ¶ 32. On December 27, 2021, the Carter Estate told Comrie that it was not interested in receiving the membership interest. *See id*. at ¶35.

Whitetail failed to make the second payment on December 31, 2022. *See id*. at ¶37.

After the deadline passed, Comrie advised the Carter Estate that he was seeking bank financing for Whitetail to make the $1.4 million second payment. *See id*. at ¶38.

On January 6, 2022, Comrie wrote

I don't have great news. We are in a tough spot. I'm really not in a position to buy the shares based on hemorrhaging money the last six months. We have too much inflated inventory that is going to make the next little while even bumpier. Based on that the company doesn't want those shares. If you want money right now the best I can do for those shares is getting a loan from my father and giving you $400K for them. If you want the full $1.4MM then it is best to sit on the shares and see if we come out of this. Happy to chat about it. Just wanted to get this in writing so you can digest it.

*Id*. at ¶39.

On January 10, 2023, counsel for the Carter Estate sent a demand letter to Elements International (directed to Michael Wurster, its president) notifying the company that Whitetail failed to pay the second payment and demanding that Elements International perform its obligation under the guaranty. The demand

expressly stated that the "letter [was] not an exercise by the estate of its rights under Section 2(v) of the [P&S] Agreement." *Id.* at ¶ 41. Carter Estate counsel also sent a demand letter to Paul Comrie demanding that he immediately perform his personal guaranty of the second payment by paying the estate $1.4 Million. *See id.* at ¶43. There was no response to the demand letters. *See id.* at ¶¶42, 43.

Plaintiffs filed this lawsuit on March 15, 2023. *See* Dkt. No. 1.

Defendants filed a motion to dismiss the Complaint on April 14, 2023. *See* Dkt. No. 7. One of their arguments was that the Co-Administrators did not have standing because they failed to file letters of administration from the Mississippi probate court with the complaint. *See* Dkt. No. 9.

On April 23, 2023, Whitetail and Elements International executed an Assignment of Membership Interest in Elements International Group, LLC "for the benefit of the [Carter] Estate," in which Elements International assigned 2.0588% of the outstanding membership interest in the company to the Carter Estate "as provided by the terms of <u>Section 2(v)</u>" of the P&S Agreement (the "April 2023 Assignment"). Dkt. No. 14-1 at 28-30.

The Carter Estate filed an Amended Complaint on May 5, 2023, attaching certified copies of letters of administration from the Mississippi probate court in an appendix. *See* Dkt. No. 10; Dkt. No. 10-4. In the amended complaint, the Carter Estate alleges breach of contract against Whitetail for its failure to pay the second $1.4 million installment under the P&S Agreement and breach of contract against Elements International and Comrie for their failures to pay the second $1.4 million

installment under the guaranties in the P&S Agreement. *See* Dkt. No. 10.

Defendants then filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss the Amended Complaint, *see* Dkt. No. 12, and the Court denied the original motion to dismiss as moot, *see* Dkt. No. 18.

In the pending motion to dismiss, Defendants contend the Court does not have subject matter jurisdiction because the Carter Estates' breach-of-contract claims are now moot. Defendants construe the P&S Agreement to provide two options for payment of the second installment – either pay the Carter Estate $1.4 million or issue it a 2.0588% membership interest in Elements International. Defendants assert they chose the alternate method of payment provided by Section 2(v) and assigned the membership interest to the Carter Estate. Defendants argue the parties agreed a 2.0588% membership interest in Elements International was equal to the outstanding $1.4 million payment. Thus Defendants' reason that because the second installment and the membership interest are of equal value, the April 2023 Assignment satisfied their obligations under the P&S Agreement, eliminated any actual controversy between the parties, and rendered Plaintiffs' claims moot.

Alternatively, Defendants contend the Carter Estate fails to state a claim for which relief may be granted because the Co-Defendants fail to plausibly allege a proper presentment of their claims, breach of contract, or damages under either the P&S Agreement or the guaranty agreements.

The Carter Estate contends Defendants misconstrue Section 2(v), arguing it

does not and cannot be read to absolve Defendants of their obligations to pay the $1.4 million second payment.

## Legal Standards

I.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

-8-

asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming*, 281 F.3d at 161 (citations omitted).

The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161.

Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

On a factual attack, however, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule

12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523. "When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (footnotes omitted). But "an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *Id.* at 319-20 (footnote omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

## II.    Federal Rule of Civil Procedure 12(b)(6)

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must

"accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that

the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the

plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

I.    The Court has subject matter jurisdiction.

Defendants contend that the Court no longer has subject matter jurisdiction because the April 2023 Assignment fully satisfied their obligations under the P&S

Agreement, which rendered the Carter Estate's claims moot.

"It is well-settled, that mootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004) (hereinafter, "*LEAN*") (citing *Deakins v. Monaghan*, 484 U.S 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants.")). "In general, a claim becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *LEAN*, 382 F.3d at 581 (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)) (additional citations omitted).

"If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citing *Matter of S.L.E. Inc.*, 674 F.2d 359, 364 (1982)). The Fifth Circuit "has long been careful to note an exception to the general principles of mootness in instances where some issues of a case have become moot but the case as a whole remains alive because other issues have not become moot." *LEAN*, 382 F.3d at 581 (citations and internal quotation marks omitted). But, "where one claim has become moot and the pleadings are insufficient to determine whether the plaintiff is entitled to another remedy, the action should be dismissed as moot." *Powell v. McCormack*, 395 U.S. 486, 499 (1969).

Defendants' mootness theory is based on interpretation of the P&S Agreement, especially Section 2(v), so the undersigned will construe the agreement under established rules for contract construction, taking care not to conflate subject

-14-

matter jurisdiction with the merits of the case. *See Ariz. St. Leg. v. Ariz. Indep. Redistricting Comm'n,* 575 U.S. 787, 800 (2015) (cautioning that federal courts must not confuse weakness on the merits with absence of Article III standing); *cf. Chafin v. Chafin*, 568 U.S. 165, 174 (2013) ("But that argument – which goes to the meaning of the [Hague] Convention and the legal availability of a certain kind of relief – confuses mootness with the merits.").

If the contract's language can be given a certain or definite legal meaning or interpretation, the contract is not ambiguous, and the Court will construe it as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Deciding whether a contract is ambiguous is a question of law for the Court. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

But, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous. *See Davidson,* 128 S.W.3d at 229. A term is not ambiguous because of a simple lack of clarity. *See DeWitt Cnty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. *See URI, Inc. v. Kleberg Cnty.,* 543 S.W.3d 755, 763 (Tex. 2018); *DeWitt*, 1 S.W.3d at 10. When a contract is ambiguous, the Court may consider the parties' interpretations and admit extraneous parol evidence to determine its true meaning. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 17, 520 (Tex. 1995).

An ambiguity in contract language is not to be confused with silence. *See*

-15-

*Maxey v. Maxey*, 617 S.W.3d 207, 222 (Tex. App. – Houston [1st Dist.] 2020, no pet.); *see also E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App. – El Paso 2007, no pet.) ("There is a significant legal difference between a contract's silence – i.e., its failure to address a particular issue – and the presence of an ambiguity in the contract language."). When a contract is silent, the question is not one of interpreting the language but, rather, one of determining its effect. *See Maxey*, 617 S.W.3d at 222-23.

Courts may not and will not rewrite contracts to insert provisions that the parties could have included, but did not, and that are not essential to the construction of the contract language. *See id.* at 223.

The Court's analysis begins with the contract's express language.

The P&S Agreement states that Michael Carter sold the Carter Membership Interest to Whitetail for $3.4 million, with the purchase price to be paid in two installments: $2 million at closing and $1.4 million on or before December 31, 2022. Comrie and Elements International guaranteed the $1.4 million second payment.

The parties' dispute stems from their interpretations of Section 2(v) of the P&S Agreement, which addresses failure to pay the second installment. Stated again, Section 2(v) of the P&S Agreement provides:

> (v)    Should neither Purchaser nor Guarantors pay the payment referenced in <u>Section 2(ii)</u> and <u>2(iv)</u> above on or before January 10, 2023, the Seller shall have the right to notify the Company of such non-payment, and the Company shall then issue (and Comrie shall cause the Company to issue) to Seller a portion of the Subject Membership Interest commensurate with the outstanding

-16-

> payment, to wit membership interest in and to the Company in an amount equal to 2.0588 of the outstanding membership interest in and to the Company.

*See* Dkt. No. 10-1 at 1-2.

The plain language of Section 2(v) gives Carter the sole right to trigger issuance of a membership interest in the event of non-payment, but it does not require him to do so.

According to Section 2(v), the membership interest can only be issued if Carter exercises his right to notify guarantor Elements International of Whitetail's, Comrie's, and its own failure to make the second payment. If Carter gives notice of non-payment under Section 2(v), then Elements International must issue him a 2.0588 percent membership interest of the outstanding membership interest in Elements International, which the parties value as being equal to the outstanding payment. Guarantor Comrie is tasked with originating and overseeing Elements International's issuance of the membership interest.

Neither Section 2(v) nor any other language in the P&S Agreement gives Elements International a reciprocal right to tender a membership interest in the event of non-payment in lieu of paying the $1.4 million second payment or extend the deadline to make the payment.

To construe the P&S Agreement otherwise would render the guaranty obligation meaningless and unenforceable because any demand for payment by the guarantors would necessarily require the Carter Estate to inform Defendants that Whitetail failed to make the $1.4 million payment, which, according to Defendants,

-17-

would serve as notice under Section 2(v), automatically requiring Elements International to issue an assignment of membership interest.

Courts construe contracts as a whole, recognizing that every clause has some effect. A reasonable interpretation is preferable to one that is unreasonable. And an interpretation that renders some terms meaningless is unreasonable. *See Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 428-29 (Tex. App. – Houston [1st Dist.] 2001, pet. denied).

If the parties mutually agreed that an assignment of a membership interest made under Section 2(v) without prior notice of non-payment from the Carter Estate would satisfy the outstanding $1.4 million second payment, they could have expressly stated that in the P&S Agreement. But they did not. And the Court cannot read that term into the P&S Agreement when the agreement is silent. *See Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 543 (Tex. App. – Eastland 2011, no pet.) ("Courts do not have the authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they did not mutually agree.").

The undersigned concludes the P&S Agreement unambiguously prohibits assignment of a membership interest under Section 2(v) unless authorized by the Carter Estate.

But Defendants made the 2023 Assignment without the Carter Estates' authorization. And an unauthorized assignment is void. *See JPMorgan Chase Bank, N.A. v. Ablet*, No. 4:17-cv-888-ALM-CAN, 2018 WL 4517628, at *7 (E.D. Tex. Aug.

17, 2018) (holding an unauthorized assignment is invalid, unenforceable, and void); *Rivera v. CitiMortgage, Inc.,* No. 3:12-cv-3404-D, 2013 WL 1294009, at *2 (N.D. Tex. Apr. 1, 2013) ("[A]n unauthorized assignment is considered void instead of merely voidable."). Thus, the unauthorized April 2023 Assignment had no effect on Plaintiffs' claims, much less rendered them moot.

Defendants also argue that the April 2023 Assignment rendered Plaintiffs' claims moot before Plaintiffs made proper presentment of their authority, qualification, and claim for breach of contract as Co-Administrators of the Carter Estate.

But, as discussed above, the April 2023 Assignment did not moot Plaintiffs' claims. Defendants' arguments about the timing of presentment of the letters of administration go to the merits of Plaintiffs' claims, not to subject matter jurisdiction.

The Court should deny Defendants' Rule 12(b)(1) motion.

II.    <u>Plaintiffs state claims on which relief may be granted.</u>

The essential elements of a breach of contract action under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Smith Intern., Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007).

Defendants assert that Plaintiffs failed to adequately plead the performance, breach, and damages elements of their breach of contract claims.

Plaintiffs allege, and Defendants concede, that Michael E. Carter performed his duties under the Agreement.

Plaintiffs allege that Whitetail breached the contract by failing to pay the Second Payment as required by Section 2(ii) of the P&S Agreement and that Comrie and Elements International breached the guaranty agreements by failing to pay the Second Payment as required by Section 2(iv) of the P&S Agreement.

And Plaintiffs allege that Whitetail, Comrie and Elements International's failure to pay the $1.4 Million debt due to the Carter Estate has and is causing damage to the Carter Estate because it has been deprived of $1.4 Million in proceeds due to the Estate.

Taking Plaintiffs' allegations as true, which the Court must do, these allegations are sufficient to plead the second, third, and fourth elements and state breach of contract claims on which relief may be granted.

The Court should deny Defendants' Rule 12(b)(6) motion.

## Recommendation

The Court should deny Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint [Dkt. No. 12].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 6, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE