IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FRANCES ELIZABETH CARTER          §
VALENTINE and WILLIAM RILEY       §
BAXTER CARTER, in their capacities §
as co-administrators of the ESTATE OF §
MICHAEL E. CARTER,                §
                                  §
            Plaintiffs,           §
                                  §
V.                                §        No. 3:23-cv-575-BN
                                  §
WHITETAIL CAPITAL, LLC; PAUL G.   §
COMRIE; and ELEMENTS              §
INTERNATIONAL GROUP, LLC,         §
                                  §
            Defendants.           §

## MEMORANDUM OPINION AND ORDER

This lawsuit filed in federal court under diversity subject-matter jurisdiction, 28 U.S.C. § 1332, *see* Dkt. No. 10 (May 5, 2023 amend. compl.), is before the undersigned United States magistrate judge for all purposes under 28 U.S.C. § 636(c), *see* Dkt. No. 26.

Plaintiffs Frances Elizabeth Carter Valentine and William Riley Baxter Carter, in their capacities as co-administrators of the Estate of Michael E. Carter, move for summary judgment on their breach of contract claims and the affirmative defenses of Defendants Whitetail Capital, LLC ("Whitetail"), Paul G. Comrie, and Elements International Group, LLC ("Elements"): (1) payment and/or partial payment; (2) contractual remedy/satisfaction and/or extinguishment of debt; (3) mootness; (4) lack of standing; (5) presentment of claims; and that (6) Plaintiffs have

sustained no damages. *See* Dkt. Nos. 46-48; *see also* Dkt. No. 23 (Jan. 22, 2024 answer to amended compl.), at 8-11.

And Plaintiffs supplemented their motion to offer evidence as to the parties' citizenships, as ordered. *See* Dkt. Nos. 50-52, 56, & 57.

Defendants responded to the summary judgment motion. *See* Dkt. Nos. 53 & 54. And Plaintiffs replied. *See* Dkt. No. 55.

For the following reasons, the Court grants the motion for summary judgment.

## Applicable Background

The Court previously set out the background applicable to this action, drawn from the operative complaint, when it addressed Defendants' motion to dismiss. *See Valentine v. Whitetail Capital, LLC*, No. 3:23-cv-575-L, 2023 WL 8832959, at *1-*3 (N.D. Tex. Dec. 6, 2023), *rec. accepted*, 2023 WL 8851640 (N.D. Tex. Dec. 21, 2023) ("*Valentine I*").

This information has not materially changed since then, so the Court sets it out again to provide context for the issues now before it at summary judgment:

> Michael E. Carter was a salesman and entrepreneur who worked for Elements International, a furniture wholesaler. Until his retirement in 2021, Carter served as both an officer and manager of Elements International and held a five percent membership interest in Elements International (the "Carter Membership Interest").
> When he retired, Carter sold the Carter Membership Interest to Whitetail Capital. Whitetail was the majority owner of Elements International's membership interests. Paul Comrie was Elements International's CEO and Whitetail's president, manager, and sole member.
> Carter and Whitetail executed a Membership Interest Purchase and Sale Agreement dated effective June 30, 2023 (the "P&S

Agreement"). Carter also executed an Assignment and Assumption of Membership Interest in Elements International Group, LLC transferring the Carter Membership Interest to Whitetail ("Assignment Agreement"). And Carter executed a letter of resignation from his various roles at Elements International.

The P&S Agreement provided that the $3.4 million purchase price would be paid in two installments:

> Section 2. Purchase Price. As the full purchase price of the Subject Membership Interest, Purchaser shall pay to Seller the sum of Three Million Four Hundred Thousand and No/100 Dollars ($3,400,000.00) (the "Purchase Price), as follows:
>
> (i)     At the closing, by wire transfer of immediately available funds to an account identified by Seller to Purchaser ("Seller's Account"), Purchaser shall pay to Seller the sum of Two Million and No/100 Dollars ($2,000,000.00).
>
> (ii)    On or before December 31, 2022, by wire transfer of immediately available funds to Seller's Account, Purchaser shall pay to Seller the sum of One Million Four Hundred Thousand and No/100 Dollars ($1,400,000.00).

Paul Comrie and Elements International guaranteed the second payment:

> (iv)    Each of Paul G. Comrie, the principal of Purchaser ("Comrie") and the Company [Elements International] (together with Comrie, sometimes called "Guarantors") agree to guarantee payment of the second payment of One Million Four Hundred Thousand and No/100 Dollars ($1,400,000.00) due to Seller on December 31, 2022, as confirmed by their respective signatures below.

The P&S Agreement further provided:

> (v)     Should neither Purchaser nor Guarantors pay the payment referenced in Section 2(ii) and 2(iv) above on or before January 10, 2023, the Seller shall have the right to notify the Company of such non-payment, and the Company shall then issue (and Comrie shall cause the Company to issue) to Seller a portion of the Membership Interest commensurate with the outstanding payment, to wit membership interest in and to the Company in an amount equal to 2.0588 of the outstanding membership interest in and to the Company.

The P&S Agreement also provided that time was of the essence, and that all notices and communications must be made in writing.

The P&S Agreement was signed by Carter, Paul Comrie as Manager of Whitetail, and Mike Wurster as President of Elements International. It was approved by Elements International's members and managers.

Whitetail paid the $2 million due for the first installment to Carter.

Carter passed away on September 4, 2022.

At the time of his death, Carter was domiciled in Lafayette County, Mississippi. On September 22, 2022, the Chancery Court of Layfette County, Mississippi admitted Carter's will to probate and issued Letters of Administration to Carter's children, Plaintiffs Frances Elizabeth Carter Valentine and William Riley Baxter Carter, as Co-Executors to administer Carter's estate.

As the December 31, 2022, deadline approached, Comrie repeatedly acknowledged Whitetail's obligation to pay the $1.4 million due to the Carter Estate but complained of financial hardship and stated that he wouldn't be able to pay the obligation when due.

On December 19, 2023, Comrie texted "I spoke to our attorney. Sounds like you guys will own 2.0588% of Elements if I do not meet the $1.4MM payment obligation at month end. Let me know if you prefer other options. Hopefully there is a workable deal. Paul." He followed up with "[l]et me know if there is something you want to try and work out. I just don't want the year end deadline to come and pass us. I'm okay with you guys retaining the shares too." On December 27, 2023, Comrie texted that he was "willing to give $100K a month until it is paid off."

The Carter Estate demanded Whitetail perform by making the $1.4 million second payment before the year end. On December 27, 2021, the Carter Estate told Comrie that it was not interested in receiving the membership interest.

Whitetail failed to make the second payment on December 31, 2022.

After the deadline passed, Comrie advised the Carter Estate that he was seeking bank financing for Whitetail to make the $1.4 million second payment.

On January 6, 2023, Comrie wrote

I don't have great news. We are in a tough spot. I'm really not in a position to buy the shares based on hemorrhaging money the last six months. We have too much inflated inventory that is going to make the next little while even bumpier. Based on that the company doesn't want those shares. If you want money right now the best I can do for those shares is getting a loan from my father and giving

-4-

you $400K for them. If you want the full $1.4MM then it is best to sit on the shares and see if we come out of this. Happy to chat about it. Just wanted to get this in writing so you can digest it.

On January 10, 2023, counsel for the Carter Estate sent a demand letter to Elements International (directed to Michael Wurster, its president) notifying the company that Whitetail failed to pay the second payment and demanding that Elements International perform its obligation under the guaranty. The demand expressly stated that the "letter [was] not an exercise by the estate of its rights under Section 2(v) of the [P&S] Agreement." Carter Estate counsel also sent a demand letter to Paul Comrie demanding that he immediately perform his personal guaranty of the second payment by paying the estate $1.4 Million. There was no response to the demand letters.

Plaintiffs filed this lawsuit on March 15, 2023.

*Valentine I*, 2023 WL 8832959, at *1-*3 (cleaned up).

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625

(5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal

quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a

finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

But, if "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense," for example, that movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986).

Accordingly, the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). That is, "[w]hen the party moving for summary judgment also bears the burden of proving the claim, he must establish that there is no genuine dispute of material fact as to every element of its claim, so that the evidence is so overwhelming that he is entitled to judgment in his favor." *Turner v. Criswell*, No. 4:19-CV-226-ALM-CAN, 2020 WL 1901086, at *3 (E.D. Tex. Jan. 6, 2020) (cleaned up), *rec, adopted*, 2020 WL 613963 (E.D. Tex. Feb. 10, 2020).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex.) (cleaned up; quoting *Meecorp Cap. Markets LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 158 (5th Cir. 2008) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)), *aff'd*, 634 F.

App'x 439 (5th Cir. 2015) (per curiam).

And, on a plaintiff's motion seeking summary judgment in its favor on its own claims, the Court will "draw all reasonable inferences in favor of the non-moving party" – that is, in favor of the defendant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

And, so, this "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-34-G-BN, 2020 WL 825819, at *7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. adopted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

But, on a plaintiff's motion on its own claim, "summary judgment is appropriate where the evidence would require a directed verdict." *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at *13 (N.D. Tex. Aug. 29, 2018) (cleaned up).

That is, a plaintiff may prevail on its claim on its own motion where, drawing all inferences in the defendant's favor and viewing the summary judgment in the light most favorable to the defendant, the evidence is "so overwhelmingly in favor of [the plaintiff] that no reasonable jury could [arrive] at a verdict other than that [the plaintiff] proved" every essential element of its claim against the defendant. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 550 (N.D. Tex. 2011),

*aff'd*, 709 F.3d 515 (5th Cir. 2013).

## Analysis

### I.    The Court possesses subject matter jurisdiction.

Before addressing the merits, the Court must address two jurisdictional concerns.

The first, raised by the Court, is the obligation that, as the parties invoking subject matter jurisdiction under 28 U.S.C. § 1332 "[a]t the summary judgment stage," Plaintiffs "provide evidence sufficient to support a jury finding of the citizenship of each" party, *Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order), as the Court further explained in the October 30, 2024 supplement to the scheduling orders, discussing this requirement as framed by recent decisions of the United States Court of Appeals for the Fifth Circuit, *see generally* Dkt. No. 50.

Through Plaintiffs' supplement to their summary judgment motion, *see* Dkt. Nos. 56 & 57, they provide evidence sufficient to support jury findings as to the parties' citizenships and to establish that each plaintiff's citizenship is diverse from each defendant's citizenship and where each individual party is domiciled (not just where each resides), *see SXSW v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

Relatedly, Defendants continue to assert that this lawsuit must be dismissed as moot. *See, e.g.*, Dkt. No. 53 at 29.

"[M]ootness is a threshold jurisdictional inquiry." *La. Env't Action Network v.*

*U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004) (citation omitted). And, "[i]n order to

maintain jurisdiction, the court must have before it an actual case or controversy at

all stages of the judicial proceedings." *Herndon v. Upton*, 985 F.3d 443, 446 (5th Cir.

2021) (citation omitted).

The Court addressed mootness earlier in this case, holding that "Defendants'

mootness theory is based on interpretation of the "P&S Agreement, especially Section

2(v), so [the Court] construe[d] the agreement under established rules for contract

construction, taking care not to conflate subject matter jurisdiction with the merits

of the case." *Valentine I*, 2023 WL 8832959, at *7; *see id.* at *6-*9.

"The law-of-the-case doctrine posits that when a court decides upon a rule of

law, that decision should continue to govern the same issue in subsequent stages in

the same case." *Woodfox v. Cain*, 772 F.3d 358, 370 (5th Cir. 2014) (quoting *Med. Ctr.*

*Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011)).

But that

> doctrine does not operate to prevent a district court from reconsidering
> prior rulings. "A court has the power to revisit prior decisions of its own
> ... in any circumstance...." *Christianson v. Colt Indus. Operating Corp.*,
> 486 U.S. 800, 817 (1988). The doctrine "directs a court's discretion, it
> does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605,
> 618 (1983) (citations omitted). The law-of-the-case doctrine is a rule of
> convenience designed to prevent unnecessary reconsideration of
> previously decided issues. *See Loumar, Inc. v. Smith*, 698 F.2d 759, 762
> (5th Cir.1983). It is equally clear, though, that the rule "yields to
> adequate reason." *Id.*

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010); *see also*

*United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997) ("[I]n civil cases a district

court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack res judicata effect." (citations omitted)).

Because, through their response to the summary judgment motion, *see* Dkt. No. 53 at 19-31, Defendants fail to persuade the Court that its prior interpretation of the P&S Agreement, in particular Section 2(v), is incorrect, the Court finds that Plaintiffs' claims are not moot and will set out below – and apply – its prior interpretation of the contractual language to the claims and defenses now before the Court on summary judgment, *cf. Personnel Staffing Grp., LLC v. Protective Ins. Co.*, 1:21-cv-1926-JPH-MG, 2022 WL 1471041, at *2 (S.D. Ind. May 9, 2022) ("Though the court 'has the power to revisit prior decisions of its own or of a coordinate court in any circumstance,' it 'should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" (cleaned up; quoting *Christianson*, 486 U.S. at 817)).

## II.  The Court grants Plaintiffs' motion for summary judgment.

Plaintiffs move for summary judgment on their breach of contract claims – that Whitetail breached its direct payment obligation and that Comrie and Elements breached their guarantor payment obligations – and Defendants' various affirmative defenses.

And the Court agrees with Plaintiffs, *see, e.g.*, Dkt. No. 47 at 6, that many of the issues now before it were addressed at the pleadings stage and that the issues that must now be resolved do not involve material questions of fact but turn on

-14-

questions of law. Those issues are: (1) whether the P&S Agreement allowed Defendants to issue the membership interest in Elements in satisfaction (or in lieu) of the second payment obligation without Plaintiffs' authorization or consent and (2) whether Plaintiffs may not recover on behalf of the Carter Estate either (a) because they have not been appointed as personal representatives of the Estate by a Texas court or (b) because their letters of administration issued by a Mississippi chancery court were not provided to Defendants prior to Elements tendering the membership interest.

And, so, this case is ripe for disposition on summary judgment.

Starting with Plaintiffs' claims that Defendants breached the parties' agreements, the essential elements of a breach of contract action in Texas are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Both sides agree that the P&S Agreement is valid. *See, e.g.*, Dkt. No. 53 at 15.

And, while both sides agree that Carter performed his obligations under the P&S Agreement, *see id.*, Defendants appear to counter that Plaintiffs have failed to perform under the P&S Agreement because no Plaintiff qualifies as a duly authorized representative of the Carter Estate, such a representative being the only party that could proceed on the claims here, according to Defendants.

Defendants further contend that they did not breach an agreement considering the membership interest in Elements that they issued as satisfaction (or in lieu) of the second payment obligation. Consequently, Defendants argue, Plaintiffs have suffered no damages.

Starting with the essential element that Plaintiffs perform and Defendants' related affirmative defenses – lack of standing and presentment of claims – Federal Rule of Civil Procedure 17(b)(3) "expressly requires the Court to apply the law of the forum state – Texas – to determine who has the capacity to sue." *Rangel v. Wellpath, LLC*, No. 5:23-cv-128-H, 2024 WL 4773311, at *10 (N.D. Tex. Nov. 13, 2024).

Under "Rule 17, courts in the Fifth Circuit have looked to the Texas Estates Code to determine the capacity of an individual to bring suit on behalf of an estate." *Id.*

Applicable here, "a foreign executor or administrator of a person who was a nonresident at the time of death may maintain a suit in this state for the recovery of debts due to the decedent." TEX. ESTATES CODE § 505.101(a).

To bring suit, a foreign executor or administrator must give "notice by a qualified delivery method to all creditors of a decedent in this state who have filed a claim against the decedent's estate for a debt due to the creditor," *id.*, and file in the suit "[t]he plaintiff's letters testamentary or of administration granted by a competent tribunal, properly authenticated," *id.* § 505.101(b).

And, because Plaintiffs have met these requirements, *see* Dkt. No. 48 at 40-42

-16-

(Albert Delgadillo Decl.), ¶ 10 ("There are not any creditors of Michael E. Carter or the Estate of Michael E. Carter in the State of Texas."); Dkt. No. 10-4 (Letters of Administration), Defendants cannot prevail on their standing affirmative defense.

Defendants appear to combine their proper presentment affirmative defense with their contention that Plaintiffs have not shown (or did not timely show) the essential element of contractual performance. *See* Dkt. No. 53 at 16-19.

But Defendants have not shown that the P&S Agreement contained such a requirement.

Nor do Defendants cite applicable Texas law to support such a requirement or show that Texas law somehow alters the performance element where an estate prosecutes a breach of contract claim. This is especially so considering that, according to the Texas Supreme Court, "[t]he estate's suit is identical to one the [decedent] could have brought during his lifetime" – and, as such, "[a]n estate's interests … mirror those of the decedent." *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009) (citing *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex. 2006) (observing that, "because the estate 'stands in the shoes' of a decedent," "the estate's personal representative has the capacity to maintain [a] claim on the estate's behalf" (footnote omitted)); footnote omitted).

Section 505.101(b), imposing the procedural requirement that letters testamentary or of administration be filed in this action, contains no explicit timing element. But, if it somehow could be read to include one, Defendants still have not

explained why Plaintiffs' curative amendment does not relate back to their original pleading (filed prior to the April 2023 Assignment). *Cf. Rangel*, 2024 WL 4773311, at *5 ("Federal Rules of Civil Procedure 15 and 17 allow the plaintiff a reasonable time to substitute a plaintiff with the capacity to sue and relate the substitution back to the original date of filing.").

In sum, Carter performed under the P&S Agreement, as Defendants admit. *See* Dkt. No. 53 at 15 ("Defendants have already admitted that Carter, individually, performed his obligations under the Agreement as noted on page 12 of Plaintiffs' Brief.").

That is what matters.

And, in that regard, because the Carter Estate "stands in [his] shoes," there are now no special hoops that it must jump through to recover for breach of contract.

But the Court will address briefly Defendants' reliance on Chapter 38 of the Texas Civil Practice and Remedies Code, Texas's attorneys' fees statute, which authorizes attorneys' fees for a successful breach of contract claim, *see* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8), and does contain a presentment requirement, *see id.* § 38.002(2), the purpose of which "is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees," *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 824 (Tex. App. – Houston [14th Dist.] 2018, pet. denied) (cleaned up); *see also Tex. Nat'l Bank v.*

*Sandia Mortg. Corp.*, 872 F.2d 692, 699 (5th Cir. 1989) ("Section 38.002 'does not require that the presentment of the claim to the debtor be in any particular form or manner.'" (quoting *Ashford Dev. Inc. v. U.S. Life Real Estate Servs. Corp.*, 661 S.W.2d 933, 936 (Tex. 1983))).

While Defendants appear to invoke Section 38.002 to defeat Plaintiffs' breach of contract claims, Defendants fail to show how this requirement specific to Texas's attorneys' fees statute could apply more generally to a common law contract claim.

And, while presentment under Section 38.002 could be an issue now had Plaintiffs moved for summary judgment on their attorneys' fees, *see Tex. Black Iron*, 566 S.W.3d at 824-25, Plaintiffs have not, *see* Dkt. No. 47 at 5 n.1 ("As Federal Rule of Civil Procedure 54(d)(2) controls when a prevailing party may seek recovery for attorneys' fees under applicable Texas law (Chapter 38 of the Texas Civil Practice and Remedies Code), Plaintiffs have not moved for summary judgment as to their attorneys' fees claim." (cleaned up)).

So, for these reasons, Plaintiffs (1) have shown that they should be granted summary judgment on Defendants' lack-of-standing and presentment-of-claims affirmative defenses and (2) have established, beyond peradventure, the essential element of performance as to their breach of contract claims.

Next, for the reasons explained in *Valentine I*, the Court rejects Defendants' arguments that Plaintiffs have not carried their summary judgment burden as to the elements of breach and damages and equally rejects Defendants' remaining and

-19-

related affirmative defenses: payment and/or partial payment; contractual remedy/satisfaction and/or extinguishment of debt; mootness; and that Plaintiffs have sustained no damages. And, for the same reasons, the Court finds that Plaintiffs have established, beyond peradventure, the remaining essential elements of their breach of contract claims.

As the Court has explained,

[i]f the contract's language can be given a certain or definite legal meaning or interpretation, the contract is not ambiguous, and the Court will construe it as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Deciding whether a contract is ambiguous is a question of law for the Court. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

But, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous. *See Davidson,* 128 S.W.3d at 229. A term is not ambiguous because of a simple lack of clarity. *See DeWitt Cnty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018); *DeWitt*, 1 S.W.3d at 10. When a contract is ambiguous, the Court may consider the parties' interpretations and admit extraneous parol evidence to determine its true meaning. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 17, 520 (Tex. 1995).

An ambiguity in contract language is not to be confused with silence. *See Maxey v. Maxey*, 617 S.W.3d 207, 222 (Tex. App. – Houston [1st Dist.] 2020, no pet.); *see also E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App. – El Paso 2007, no pet.) ("There is a significant legal difference between a contract's silence – i.e., its failure to address a particular issue – and the presence of an ambiguity in the contract language."). When a contract is silent, the question is not one of interpreting the language but, rather, one of determining its effect. *See Maxey*, 617 S.W.3d at 222-23.

Courts may not and will not rewrite contracts to insert provisions that the parties could have included, but did not, and that are not essential to the construction of the contract language. *See id.* at 223.

The Court's analysis begins with the contract's express language. The P&S Agreement states that Michael Carter sold the Carter Membership Interest to Whitetail for $3.4 million, with the purchase price to be paid in two installments: $2 million at closing and $1.4 million on or before December 31, 2022. Comrie and Elements International guaranteed the $1.4 million second payment.

The parties' dispute stems from their interpretations of Section 2(v) of the P&S Agreement, which addresses failure to pay the second installment. Stated again, Section 2(v) of the P&S Agreement provides:

> (v)    Should neither Purchaser nor Guarantors pay the payment referenced in <u>Section 2(ii)</u> and <u>2(iv)</u> above on or before January 10, 2023, the Seller shall have the right to notify the Company of such non-payment, and the Company shall then issue (and Comrie shall cause the Company to issue) to Seller a portion of the Subject Membership Interest commensurate with the outstanding payment, to wit membership interest in and to the Company in an amount equal to 2.0588 of the outstanding membership interest in and to the Company.

*See* Dkt. No. 10-1 at 1-2.

The plain language of Section 2(v) gives Carter the sole right to trigger issuance of a membership interest in the event of non-payment, but it does not require him to do so.

According to Section 2(v), the membership interest can only be issued if Carter exercises his right to notify guarantor Elements International of Whitetail's, Comrie's, and its own failure to make the second payment. If Carter gives notice of non-payment under Section 2(v), then Elements International must issue him a 2.0588 percent membership interest of the outstanding membership interest in Elements International, which the parties value as being equal to the outstanding payment. Guarantor Comrie is tasked with originating and overseeing Elements International's issuance of the membership interest.

Neither Section 2(v) nor any other language in the P&S Agreement gives Elements International a reciprocal right to tender a membership interest in the event of non-payment in lieu of paying the $1.4 million second payment or extend the deadline to make the payment.

To construe the P&S Agreement otherwise would render the guaranty obligation meaningless and unenforceable because any demand for payment by the guarantors would necessarily require the

Carter Estate to inform Defendants that Whitetail failed to make the $1.4 million payment, which, according to Defendants, would serve as notice under Section 2(v), automatically requiring Elements International to issue an assignment of membership interest.

Courts construe contracts as a whole, recognizing that every clause has some effect. A reasonable interpretation is preferable to one that is unreasonable. And an interpretation that renders some terms meaningless is unreasonable. *See Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 428-29 (Tex. App. – Houston [1st Dist.] 2001, pet. denied).

If the parties mutually agreed that an assignment of a membership interest made under Section 2(v) without prior notice of non-payment from the Carter Estate would satisfy the outstanding $1.4 million second payment, they could have expressly stated that in the P&S Agreement. But they did not. And the Court cannot read that term into the P&S Agreement when the agreement is silent. *See Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 543 (Tex. App. – Eastland 2011, no pet.) ("Courts do not have the authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they did not mutually agree.").

The undersigned concludes the P&S Agreement unambiguously prohibits assignment of a membership interest under Section 2(v) unless authorized by the Carter Estate.

But Defendants made the 2023 Assignment without the Carter Estates' authorization. And an unauthorized assignment is void. *See JPMorgan Chase Bank, N.A. v. Ablet*, No. 4:17-cv-888-ALM-CAN, 2018 WL 4517628, at *7 (E.D. Tex. Aug. 17, 2018) (holding an unauthorized assignment is invalid, unenforceable, and void); *Rivera v. CitiMortgage, Inc.*, No. 3:12-cv-3404-D, 2013 WL 1294009, at *2 (N.D. Tex. Apr. 1, 2013) ("[A]n unauthorized assignment is considered void instead of merely voidable."). Thus, the unauthorized April 2023 Assignment had no effect on Plaintiffs' claims, much less rendered them moot.

*Valentine I*, 2023 WL 8832959, at *7-*8.

In sum, Plaintiffs have carried their burden to defeat Defendants' affirmative defenses at summary judgment by showing that those defenses are not subject to factual dispute but fail as a matter of applicable law.

And, for many of the same reasons, Plaintiffs have "established, beyond peradventure, all of the essential elements of [their] breach of contract claim[s] to

warrant judgment in [their] favor." *Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 689 (N.D. Tex. 2023) (citing *Fontenot*, 780 F.2d at 1194).

## Conclusion

The Court GRANTS the motion for summary judgment filed by Plaintiffs Frances Elizabeth Carter Valentine and William Riley Baxter Carter, in their capacities as co-administrators of the Estate of Michael E. Carter, as to their breach of contract claims and the affirmative defenses of Defendants Whitetail Capital, LLC, Paul G. Comrie, and Elements International Group, LLC [Dkt. No. 46].

Accordingly, the April 30, 2025 trial setting and its related deadlines, *see* Dkt. No. 63, are VACATED.

SO ORDERED.

DATE: April 9, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE